GEORGE W. MULLER BANK FIXTURE COMPANY *v.*
SOUTHERN SEATING AND CABINET COMPANY *et al.*

1. A suit in equity, based on separate and distinct claims against different persons, where there is no common right to be established, will be dismissed on demurrer on the ground of multifariousness.
2. Where a petition is dismissed for such cause, the court will not rule upon the merits of the several claims set forth in the petition.

JUNE 14, 1917.

Equitable petition. Before Judge Pendleton. Fulton superior court. June 20, 1916.

The bill of exceptions assigns error on a judgment sustaining certain demurrers to a petition and dismissing the action brought by George W. Muller Bank Fixture Company in the superior court of Fulton county. The defendants were E. Morgan, a resident of Chatham county, and the Southern Seating and Cabinet Company (hereinafter called the company), with its principal office in Jackson, Tenn. The petition alleged the following, in substance: All of the parties were building contractors. Morgan had a contract to remodel and make certain improvements on the bank building of the Georgia State Savings Association in the City of Savannah, for which he was to receive about $34,000, if completed within four months, the time specified within which the work should be performed. Morgan sublet the inside work of the building and other parts thereof to the defendant company at the price of about $16,-000. At the end of about two years the company, having failed to finish its contract with Morgan, made a contract with plaintiff to finish the work. This contract, omitting the formal parts, was as follows:

"This agreement made the 13th of January, A. D. 1912, between Southern Seating & Cabinet Company, of Jackson, Tenn., of the first part, and George W. Muller Bank Fixture Company, of Atlanta, Ga., both parties being duly incorporated companies of the said respective States, witnesseth: Whereas the first party made contract with E. Morgan, of Savannah, Ga., to perform and do the things detailed and required under part three of the specifications and plans of H. W. Witcover, architect, for the improvement of the building and office of the Georgia State Savings Association of Savannah, Ga., and whereas the first party has partly performed the said contract, but is ready and willing to retire therefrom and have the second party perform and complete the said contract according to the said plans and specifications, or at least to the satisfaction and acceptance of the said Georgia State, and said architect and E. Morgan, without offset or counter-charge. Now, therefore, this agreement witnesseth that the said party of the second part, in consideration of the sum of fifty-six hundred dollars to be paid them by the said E. Morgan, contractor, (the said first party assigning all amounts coming to them out of said contract to the

second party) doth covenant and agree to underwrite, complete, and perform the said contract made by the first party with E. Morgan, according to the said plans and specifications, or at least to the entire satisfaction of the said Georgia State. It is further covenanted and agreed that the said second party will complete the said contract in all respects within ninety days from the date of these presents. It is further covenanted and agreed that the said second party will look solely to the said E. Morgan for payment for the work, labor, and services done by the said second party in the completing of the said contract, and the second party shall be entitled to all moneys under the contract with the first party and E. Morgan, except as hereinafter shown. It is further agreed that it is understood and stated by the said E. Morgan that there is a balance of $6512 odd cents, that would now be payable to first party if the said contract had been completed. The second party is hereby authorized by the first party to collect the entire amount that may be due and payable by the said E. Morgan to the first party, payments to be made as provided for in part one of the said plans and specifications. The second party, however, agrees to pay to the first party, upon the completion of the said contract, the amount of $912 odd cents, said payment to be made on the said completion of the said contract, the second party giving its note for the said amount, due 100 days after date hereof (being the time at least within which completion should be made). In the event there shall be no deduction made by reason of the curly birch that has been used on said contract, the second party agrees to pay the first party an additional six hundred dollars, upon the completion of the said contract. The second party shall have the right to use any and all material on the said job owned by the said first party without extra charge. The first party guarantees to the second party that there are no unpaid bills for work done or material furnished by the first party on said job, to any other person whatsoever, and to indemnify and hold harmless the second party against any such bills, for work or material or labor, liens or otherwise, incurred by the first party on account of said job, prior to the date of these presents or the time when the second party put its men on the said work. The second party agrees to give bond, with surety acceptable to first party, to indemnify and hold harmless the first party in the performance of this present contract ex-

pressed in these presents, and for the payment of all bills for labor and material and work done in the completion of the said contract, said bond to be in the sum of $1,000.00. The first party, in consideration of the premises, does hereby assign, transfer, and set over unto the second party all of the moneys due to or become due by the said E. Morgan to it by reason of the said contract had and held by the first party with the said E. Morgan on the said Georgia State Savings Association contract and building, the excess of said moneys over and above $5,600.00 to be collected by the second party and accounted for to the first party as hereinbefore provided for; the intent of these presents being, that, in consideration of this assignment and transfer, the said second party agrees to underwrite the said contract with E. Morgan, take and [taking?] place of a contractor for the completion of the same, and to pay over to the said first party the said excess over $5600.00 on the completion of the said contract; and if the said curly birch is for any reason accepted and no deduction is made on said account therefor, the second party is to pay the sum of $600.00 in addition to the said excess over $5600.00 to the first party."

Concurrently with the execution of the foregoing contract, the company gave to the plaintiff a written assignment of all moneys coming to it from Morgan under the contract, which assignment, omitting formal parts, is as follows:

"Know all men by these presents, that we, Southern Seating & Cabinet Company, a corporation, having fully assigned and set over unto the George W. Muller Bank Fixture Company, of Fulton County, Georgia, all sums that are due or may hereafter become due to us by E. Morgan, of Savannah, Georgia, by virtue of the work done and services performed by us in improving the property of Georgia State Savings Association of Savannah, Ga.: Now, therefore, we do hereby authorize and empower the said George W. Muller Bank Fixture Company, upon the completion of the said contract made by us with said E. Morgan, and from time to time as the same is being completed, to collect from the said E. Morgan in our name, place, and stead all sums that may be due and owing on our contract with the said E. Morgan, all such payments made by said E. Morgan to our said assignees being hereby acknowledged to be authorized and proper; and we hereby acquit the said E. Morgan from any claim or liability on our part in making any such

payments to the said George W. Muller Bank Fixture Company during its completion and upon completion of the said contract."

At the time of making the contract the plaintiff and the company estimated that it would take about 100 days to complete the work, and the plaintiff gave its note to the company for $912, due in about 100 days thereafter. When the note became due the plaintiff had not completed its contract; and the note was renewed for the same amount, to become due in 50 days. Plaintiff was paid at intervals the sum of $4596.50, leaving a balance due of $1916 which Morgan refuses to pay, on the ground that the defendant company has damaged him in that amount on account of its long delay, the delay having occurred before plaintiff took charge of the work. Plaintiff demanded the balance from Morgan, but he took the position that he had never recognized plaintiff as a "separate and independent contractor," and that there was no contractual relation existing between him and plaintiff; and he proposed to withhold the amount to cover his damage sustained on account of delay in completing the work. When the renewal note for $912 fell due, the defendant company instituted a suit thereon in the city court of Atlanta. A defense was filed; but, being unfamiliar with the merits of the claim of Morgan, plaintiff was not prepared to properly defend the suit in the city court. The note and the contract with the defendant company constitute the same contract, and are to be construed together; and when so taken, plaintiff "does not owe said note," and the said note "is without consideration," the same having been given for the amount coming to the defendant company from Morgan, over and above $5600 which plaintiff was to collect for the defendant company, plaintiff being liable only for the amount in the event it collected the same from Morgan. Morgan did not claim any damage from plaintiff, but only against the defendant company. If Morgan recovers against the defendant company and the recovery amounts to the balance due plaintiff, the defendant company will be liable to plaintiff under this contract for such amount, "less any amount which your petitioner may owe to said company." While plaintiff was to look to Morgan for its money, it did not assume responsibility for previous damage, nor did plaintiff know of any such claim for damage at the time it contracted to do the work. Upon the facts alleged the following prayers were set forth:  (1) That

the defendant company be enjoined from prosecuting its suit in the city court. (2) That on the trial the defendant company recover from Morgan, for the use of plaintiff, the sum of $1916, the balance due under the contract. (3) That all of the issues involved in the contracts between the defendant company and Morgan and all the issues involved in the contract between the plaintiff and the defendant company be tried in one case. (4) That whatever amount the defendant company may recover from Morgan go as a credit on the plaintiff's claim against the defendant company, and that all the equities and rights claimed by plaintiff against the defendant company and all of the equities and rights claimed by the defendant company against Morgan be tried in this case, and a decree be entered settling the rights between all the parties. (5) For general relief and process. The amendment alleged the following, in substance: Both defendants have waived objection to the jurisdiction of the court; the company, by filing a general demurrer and answer, and Morgan by filing a general demurrer. And further, plaintiff was assignee of the defendant company of its contract with Morgan, "by which the sum of $5600.00 was to be paid by said Morgan to the said company, and represented and covenanted by said Morgan and by the said company to be without set-off or counter-charges; that Morgan accepted said assignment, without claim for any offset or countercharge, until the plaintiff had finished the work and payment on the contract had been made down to the sum of $1916.00; that, in order to avoid paying plaintiff, Morgan claimed that he had an offset or charge against the Southern Seating and Cabinet Company;" that the basis of the plaintiff's contract with defendant company was the amount to be owing by Morgan to that company at the conclusion of the work and at the time of the assignment aforesaid; that it is impossible for the plaintiff's claim against defendant company to be settled without an accounting and a settlement of the account of the defendant company with the defendant Morgan; "and it is necessary for an accounting to be had between all of said parties." Upon these allegations it was prayed that plaintiff have judgment against Morgan, that there be an accounting between all the parties, and that their rights be decreed. The defendants filed separate demurrers, both of which complained among other things: (a) that no cause of action was set forth;

(*b*) that there was an unauthorized joinder of parties and causes of action, rendering the petition multifarious; (*c*) that it appears upon the face of the petition that the court is without jurisdiction.

*Lewis W. Thomas,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman, Leon C. Greer, Frederick T. Saussy,* and *Osborne & Lawrence,* for defendants.

ATKINSON, J.  The allegations of the petition are to be construed in connection with the contract of assignment between the defendant company and the plaintiff, and also the power of attorney executed by the defendant to the plaintiff; copies of which were attached to the petition as exhibits.  The defendant Morgan was not a party to either of these papers, and the petition is not to be construed as alleging any contractual relation between plaintiff and Morgan.  The allegations as to payment by Morgan to the plaintiff of portions of the contract price, from time to time, should be construed as allegations of payment to the defendant company with whom Morgan had his contract; the plaintiff collecting them in a representative capacity in pursuance of its written power of attorney.  To hold otherwise would require a strained construction in favor of the pleader.  It would amount to a holding that Morgan, though not a party to the writing, had discharged the defendant company and accepted the plaintiff as a substituted contractor; a result entirely foreign to the provisions of the contract, and evidently not contemplated by the parties.  In the absence of contractual relation between Morgan and the plaintiff, it was but natural that Morgan should raise no objection to the defendant company engaging the plaintiff to perform its work under supervision of the architect, and to allow the plaintiff to collect payments during the progress of the work under power of attorney.  If a substitution of the plaintiff for the defendant company had been contemplated by all of the parties, Morgan would have been a necessary party to the contract, and there would have been no occasion for the power of attorney from the defendant company to the plaintiff.  Construing the petition as not alleging any contractual relation between plaintiff and Morgan, an instance is presented of a plaintiff joining in one action a party defendant with whom he has a contract, and another party defendant with whom he has no contract, and against each of whom he seeks general judgments in personam; in one instance,

for an amount due the plaintiff under its contract, and in the other instance for an amount due plaintiff's contractor by the other defendant in the case. It may be otherwise stated as an effort by an alleged creditor to join in one action his own debtor and the debtor of the latter, against whom the first had no cause of action, for the purpose, first, of rcovering a judgment against his debtor, and, to the end that he might facilitate the collection of his judgment, that he be allowed in his own name, or in the name of his debtor, to obtain in the same action a general judgment against his debtor's debtor. Under the circumstances, Morgan would not be interested or affected by any relation between the plaintiff and defendant company, nor by any accounting between them, nor by the result of the injunction feature of the petition, whereby it was sought to enjoin the pending action in the city court of Atlanta. As this was an effort to join in one action separate and distinct claims against different parties, where there was no common right to be established, the petition was subject to demurrer upon the ground that it was multifarious. Civil Code, §§ 5523, 5419, 5515; *Stuck* v. *Southern Steel Co.*, 96 *Ga.* 95 (22 S. E. 592); *Van Dyke* v. *Van Dyke*, 120 *Ga.* 984 (48 S. E. 380); *White* v. *North Georgia Electric Co.*, 128 *Ga.* 539 (58 S. E. 33). In *Ansley* v. *Davis*, 140 *Ga.* 615 (79 S. E. 454), a petition was held subject to demurrer upon the ground that it was multifarious. There were other grounds of demurrer which went to the merits of the defendant's claims as to causes of action alleged in the petition. It did not appear upon which ground of demurrer the petition was dismissed, but it was held that the judgment would not be reversed, for it was proper upon other grounds. Accordingly the judgment was affirmed upon the ground as indicated. With respect to the other matters alleged, it was said, in the course of the opinion: "If we should pass upon the merits of the several claims, it would be possible for a plaintiff to include in one action a multitude of disconnected claims against as many separate persons, and thus procure a decision upon the merits of each, and in effect avoid the rule above announced against joining in one action separate claims against separate persons." Applying the rule last stated, no decision will be made on the merits of the several claims set out in the petition in this case.

*Judgment affirmed. All the Justices concur.*